IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMUEL B. FORD,<br><br>Defendant. | No. CR 11-0046<br><br>REPORT AND<br>RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Was There a Franks Violation?*. . . . . . . . . . . . . . . . . 5
     B.   *Is the Search Warrant Supported by Probable Cause?*. . . . . . . 7

VI.  RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 9th day of May 2011, this matter came on for hearing on the Motion to Suppress (docket number 22) filed by the Defendant on April 27, 2011. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. Defendant Samuel B. Ford appeared in person and was represented by his attorney, Leslie E. Stokke.

## II. PROCEDURAL HISTORY

On March 8, 2011, Defendant was charged by Indictment with one count of distribution of crack cocaine and heroin, after having previously been convicted of a felony drug offense. Defendant entered a plea of not guilty, and trial was scheduled for May 9, 2011.

On April 5, 2011, the Indictment was superseded to include a second count of distribution of heroin. At Defendant's request, the trial was then continued to June 13, 2011.

On April 27, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on May 5, 2011. With the Court's permission, Defendant filed a supplemental brief on May 11, 2011. The Court granted the Government until May 16, 2011 to supplement its brief. The Government briefed the issue of probable cause in its initial brief, however, and the Court concludes that further briefing is not required.

## III. ISSUES PRESENTED

While Defendant's motion and supporting brief are less than clear, it was established at the time of hearing that Defendant raises two arguments: First, there was a *Franks* violation; and second, the search warrant was not supported by probable cause. The Government denies Defendant's claims and affirmatively asserts that the *Leon* good faith exception would apply in any event.

## IV. RELEVANT FACTS

On February 21, 2011, Cedar Rapids Police Investigator Brian Furman, who is currently assigned to the DEA Task Force, submitted an application for a search warrant to a state judicial officer in Linn County, Iowa.[1] The application sought authority to

---

[1] The signature of the "Magistrate/Judge" on the application and endorsement are illegible.

2

search an apartment located on D Avenue NE in Cedar Rapids.[2] In finding probable cause and issuing the search warrant,[3] the judicial officer relied on the sworn testimony of Furman, as set forth in an affidavit described as "Attachment A."

In his affidavit, after describing his training and experience, Investigator Furman describes generally the way in which drug transactions are commonly conducted. Beginning with paragraph V, Furman then describes the circumstances allegedly providing probable cause to search Defendant's residence.

According to Investigator Furman's affidavit, on January 24, 2011, members of the DEA Task Force conducted a controlled purchase of heroin from Defendant at the residence described in the application for search warrant. (It was established at the instant hearing, however, that Defendant has not been charged for the controlled transaction allegedly occurring on January 24, 2011.) The affidavit states that Defendant is also known as "SP."

On February 20, 2011 at approximately 6:53 a.m., police officers were dispatched to an apartment on First Avenue SE in Cedar Rapids, regarding a subject who was unconscious and not breathing. Upon arrival, Christina Worm let the officers in and directed them to the bedroom, where a white male – later identified as Joseph Scolaro – was lying face-up on the bed. Scolaro was transported to Mercy Medical Center, where he was pronounced dead. Officers questioned Worm – first at the scene and then at the police department – regarding her knowledge of the circumstances that led to Scolaro's death. Worm told investigators that Scolaro was her boyfriend. According to Worm, she and Scolaro had been drinking whiskey and using heroin, which Worm believed led to Scolaro's death.

---

[2] The application describes the property to be searched in detail, but that description will not be repeated here.

[3] A copy of the search warrant was not introduced as an exhibit at the hearing.

3

According to Investigator Furman's affidavit, Worm told officers that Scolaro purchased the heroin from his supplier, whom she knew as "SP." At approximately 11:00-11:30 p.m. on February 19, Worm and Scolaro drove to the area of the Dairy Queen located at D Avenue and 16th Street NE in Cedar Rapids to meet "SP." Worm told officers that Scolaro exited her car and walked into the front door of a gray house with blue trim just off of the parking lot of the Dairy Queen on D Avenue NE. That description is consistent with the house described in the application for the search warrant. After a short time in the residence, Scolaro returned with the heroin.

Worm and Scolaro then returned to her residence. Scolaro used a syringe to inject Worm with heroin, after which time he injected himself. Both Scolaro and Worm "passed out" a short time later. When Worm awoke in the morning, she realized that Scolaro needed medical assistance and phoned 911 for help. After the interview was completed, an officer drove Worm to the area which she had described. Worm pointed out the house matching the description given by her during the interview.

After Scolaro was declared dead, officers conducted a "death notification" with Melissa Scolaro. Scolaro was Melissa Scolaro's ex-husband. After Melissa Scolaro was advised that the possible cause of death was a heroin overdose, she told officers that she was aware Scolaro was a heroin user and had been present on several occasions when Scolaro made purchases of heroin. Melissa Scolaro told officers that on previous occasions she had provided Scolaro with transportation to a house near the Dairy Queen on 16th Street NE. According to Melissa Scolaro, she was familiar with Scolaro's source of supply and knew him by his street name "SP." Melissa Scolaro told officers that when Scolaro purchased heroin from "SP," he usually entered the residence through a door located at the back of a house off the alley.

## V. DISCUSSION

Defendant asks that the Court suppress all evidence obtained during the search of his residence pursuant to the state search warrant. In his motion, Defendant asserts that the search warrant "was obtained by provision of an affidavit which contained information from an unreliable, biased source and an alleged controlled buy for which no evidence has been provided through discovery to the undersigned."[4] In his brief, Defendant asserts that information contained in the affidavit referring to a controlled purchase of heroin on January 24, 2011, "was provided with a reckless disregard for the truth and that removal of these allegations from the affidavit, considering the sources of information reduces the veracity of the remaining allegations."[5] The only case cited in Defendant's brief is *Franks v. Delaware*, 438 U.S. 154 (1978).

At the time of hearing, the Court first asked Defendant's counsel to clarify the issues being raised in his motion to suppress. While his brief refers only to the *Franks* issue, Defendant also argues that the affidavit submitted in support of the application did not establish probable cause for the issuance of a search warrant.

### A. Was There a Franks Violation?

Defendant's brief references an allegation of a controlled purchase of heroin from Defendant on January 24, 2011, as set forth in paragraph V of Investigator Furman's affidavit. Defendant states that he "has been unable to locate the information concerning this alleged purchase of heroin."[6] According to Defendant's brief:

> It is the undersigned's belief that this information was provided with a reckless disregard for the truth and that removal of

---

[4] *See* Motion to Suppress (docket number 22), ¶ 2 at 1.

[5] *See* Defendant's Brief (docket number 22-1) at 2.

[6] In a footnote to its brief, the Government states that "[d]ue to the ongoing nature of the investigation, defendant has not been charged with the January 24, 2011, controlled buy and the confidential informant's name has been withheld." *See* Government's Memorandum (docket number 24-1) at 4, n.1.

> these allegations from the affidavit, considering the sources of
> information reduces the veracity of the remaining allegations.

*See* Defendant's Brief (docket number 22-1) at 2. In its brief, the Government argues that Defendant failed to satisfy the requirements for an evidentiary hearing under *Franks*.

In *Franks*, the Court held that if a defendant establishes by a preponderance of the evidence that a sworn statement used by police to procure a search warrant contained perjury or reckless disregard for the truth, then the Court must determine whether the affidavit's remaining content is sufficient to establish probable cause. If not, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 156. The Court emphasized, however, that a defendant is not entitled to an evidentiary hearing without first making "a substantial preliminary showing." *Id.* at 155.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id.* at 171. *See also United States v. Freeman*, 625 F.3d 1049, 1050 (8th Cir. 2010).

Defendant's motion and supporting brief fail to make the requisite "substantial preliminary showing" to entitle him to an evidentiary hearing. At best, Defendant's allegations are conclusory. To prevail on a *Franks* claim, Defendant must prove by a preponderance of the evidence that the allegations regarding the January 24, 2011 controlled buy are false, and they were made by Investigator Furman with knowledge of their falsity, or with reckless disregard for their truth or falsity. Defendant did not make any offer of proof in that regard, submit any affidavits in support of his claim, or

6

otherwise produce reliable statements of witnesses regarding the alleged falsity. Accordingly, as indicated by the Court at the time of hearing, Defendant is not entitled to relief under *Franks*.

### B. Is the Search Warrant Supported by Probable Cause?

Next, Defendant argues that Investigator Furman's affidavit did not establish probable cause for a search warrant to issue. Defendant did not brief this issue, but instead makes only vague references to the "veracity" of "an unreliable, biased source." Because the issue was not briefed, it may be considered waived.[7] Nonetheless, to avoid any prejudice, the Court allowed Defendant to file a post-hearing brief. A supplemental brief was filed on May 11.

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

---

[7] *Ramirez v. Debs-Elias*, 407 F.3d 444, 447 n.3 (1st Cir. 2005) (cited with approval in *United States v. Johnson*, 403 F. Supp. 2d 721, 764 (N.D. Iowa 2005)). *See also* Local Rule 7.d (requiring the movant to provide a brief containing "citations to the authorities upon which the moving party relies"); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived.").

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

In this case, no oral testimony was presented to the judicial officer when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827. Here, Investigator Furman's affidavit advised the issuing judge of the following: (1) four weeks earlier, DEA task force members had conducted a controlled purchase of heroin from Defendant at the location where authorities sought permission to search; (2) Defendant is also known as "SP"; (3) on the day prior to the search warrant application, Joseph Scolaro was found dead from an apparent heroin overdose; (4) Scolaro's girlfriend, Christina Worm, told authorities that Scolaro's supplier was a person whom she knew as "SP"; (5) a few hours prior to Scolaro's death, Worm transported Scolaro to a house in the vicinity of the Dairy Queen at D Avenue and 16th Street NE to purchase heroin from SP; (6) Worm observed Scolaro enter the house and return a short time later with heroin; (7) following her interview, Worm accompanied an officer to the area and pointed out the house which she had described in her interview; (8) the house identified by Worm was the same location as the controlled buy from Defendant on January 24, 2011; (9) when officers notified Scolaro's ex-wife of his death,

8

Melissa Scolaro said she was familiar with Scolaro's source of supply and knew him by his street name "SP"; and (10) when purchasing heroin from SP, Scolaro would enter a residence near the Dairy Queen on 16th Street NE through a door located at the back of the house off the alley.

In arguing that probable cause was not established by the affidavit, Defendant asserts that Worm is "an unreliable, biased source." Defendant does not provide any detail, however, regarding why he believes Worm is unreliable, or why he believes Worm may be biased against him. "The credibility and reliability of a person providing information to the police are important factors to be considered in a determination of probable cause." *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996) (citing *Gates*, 462 U.S. at 230). It must be noted, however, that they are not "separate and independent requirements to be rigidly exacted in every case." *Id.* Instead, the Court has emphasized that "probable cause is to be determined under a totality-of-the-circumstances approach." *Id.*

As noted by the issuing judge in this case, Worm was not a "confidential informant." Instead, she was an identified person who had first-hand knowledge of the information provided to authorities, and recounted in Investigator Furman's affidavit. Events observed first-hand entitle the information to greater weight than might otherwise be the case. *United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005) (citing *Gates*, 462 U.S. at 234); *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986).

In addition, Worm's statements may have been against her penal interests. Worm admitted transporting Scolaro for the purpose of obtaining heroin, which then caused his death. Worm also admitted using heroin. A statement against one's penal interest is presumptively credible, even if others are also implicated. *Leppert*, 408 F.3d at 1042 (citing *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)). *See also LaMorie*, 100 F.3d at 553 ("[S]tatements against the penal interest of an informant naturally carry considerable weight."); *Reivich*, 793 F.2d at 959-60 ("The concept of statements against

penal interest should not be interpreted narrowly and grudgingly but should be applied consistently with the underlying concern of determining the reliability of tips from informants.").

Moreover, the information provided by Worm was corroborated by Melissa Scolaro and by Investigator Furman's statement that a controlled purchase of heroin had been made from Defendant at that location four weeks earlier. Worm told authorities that Scolaro's supplier was a person whom she knew as "SP." Melissa Scolaro also said that she was familiar with Scolaro's source of supply and knew him by his street name "SP." The affidavit asserts that on January 24, 2011, a controlled purchase of heroin was made from Defendant "aka: 'SP'." Melissa Scolaro told authorities that Scolaro would purchase heroin from a residence near the Dairy Queen on 16th Street, which is consistent with Worm's information regarding where the heroin was purchased during the hours preceding Scolaro's death. The description of the residence given by Melissa Scolaro and Worm is also consistent with the location where the controlled purchase occurred from Defendant one month earlier. When the information provided is corroborated by other sources, its reliability is enhanced. *Reivich*, 793 F.2d at 960 ("The theory connecting reliability and corroboration is that an informant who is correct about some things more likely will be correct about critical unverified facts."). *See also Leppert*, 408 F.3d at 1041 ("[T]he tips of two informants may be 'reciprocally corroborative, rendering their information enough to support a finding of probable cause.'") (quoting *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998)).

In considering the totality-of-the-circumstances, the Court believes that the issuing judge made a practical, common-sense decision that there was "a fair probability that contraband or evidence of a crime" could be found at the Defendant's residence. Accordingly, the search warrant was supported by probable cause, and Defendant's argument in this regard fails.

Since the search warrant was lawfully issued, the Court need not address the Government's alternative argument that the officers acted in good faith and, therefore, the

exclusionary rule would not apply in any event. *See United States v. Leon*, 468 U.S. 897 (1984). The Court notes that Defendant did not brief or argue the *Leon* issue, despite being given an opportunity to file a post-hearing brief.

## VI. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Motion to Suppress (docket number 22) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on* May 9, 2011.

DATED this 12th day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA